# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 17, 2009

No. 09-50374
Summary Calendar

Charles R. Fulbruge III
Clerk

LONE STAR BAKERY, INC.,

Plaintiff - Appellant

v.

UNITED STATES OF AMERICA,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
No. 5:05-CV-11

Before KING, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Lone Star Bakery brought a negligence claim against the government under the Federal Tort Claims Act, alleging that Food and Drug Administration agents negligently caused an erroneous report of dangerous bacteria in its products. The district court granted summary judgment to the government, finding that Lone Star had failed to raise fact issues on the elements of duty and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

causation. Because we agree that Lone Star has failed to raise a fact issue on causation, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Lone Star Bakery, Inc., is a commercial baker that makes biscuits at a plant in China Grove, Texas. Until 2002, Lone Star had sold biscuits to Southland Corporation, the owner of 7-Eleven convenience stores. Under that arrangement, Lone Star delivered biscuits to Phoenix, Arizona, where MarketFare Foods, Inc., assembled them into completed sandwiches for delivery to convenience stores; MarketFare purchased other ingredients, such as egg and cheese, from different vendors. The termination of Lone Star's arrangement with Southland prompted the lawsuit at issue.

On March 1, 2002, the Florida Department of Agriculture and Consumer Services received a consumer complaint of gastrointestinal distress. The complaint alleged that the stomachache was caused by consumption of a sausage, egg, and cheese biscuit sandwich purchased from a convenience store in Daytona Beach, Florida. An inspector collected five sample sandwiches from the store, two of which tested positive for *Listeria monocytogenes*, a harmful and potentially fatal bacterium. The Florida agency alerted MarketFare and the United States Food and Drug Administration (FDA).

The FDA began its investigation at MarketFare's Phoenix assembly plant. Two inspectors collected the individual components and shipped them to an FDA laboratory in California. There, the individual components were tested. On April 5, 2002, a representative from the FDA informed MarketFare that the biscuit component and the finished sandwich had both tested presumptive positive for *Listeria monocytogenes*. That same day, MarketFare issued a recall of the sandwiches, and Southland terminated its business relationship with Lone Star.

On April 9, the FDA conducted an inspection at Lone Star's China Grove plant. FDA workers observed perforations in the plastic packaging used to seal the biscuits before they were shipped to MarketFare. Lone Star was informed on April 25 that the facility and biscuits tested negative for *Listeria monocytogenes*; a written report to this effect was issued on April 30. During this time, the FDA did not order a recall of any Lone Star biscuits.

Lone Star filed an administrative claim with the FDA on August 1, 2003, claiming over $2.9 million in damages. After waiting the requisite six months under 28 U.S.C. § 2675(a), Lone Star filed suit in federal district court under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq*. Lone Star's amended complaint alleged that the FDA was negligent in its collection, testing, and reporting of the biscuit samples manufactured by Lone Star.

The government moved to dismiss Lone Star's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. Lone Star filed a memorandum in opposition to the motion and attached a partial transcript of the deposition testimony of Bruce Benware, one of the FDA representatives who collected sandwich components at MarketFare's Phoenix plant. The government filed a reply, attaching the reports of both parties' experts. Because matters outside the pleadings were presented, the district court treated the government's motion as one for summary judgment under Rule 56. *See* FED. R. CIV. P. 12(d). The district court granted the government's motion, holding that Lone Star had neither established that the FDA owed it a duty under Texas law nor raised a fact issue on whether the FDA proximately caused Lone Star's claimed damages. Lone Star now appeals.

## II. STANDARD OF REVIEW

"We review a grant of summary judgment *de novo*, applying the same standards as the district court." *Frakes v. Crete Carrier Corp.*, 579 F.3d 426, 429

(5th Cir. 2009). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is proper only if no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the nonmoving party bears the burden of proof at trial on a dispositive issue, he or she must go beyond the pleadings and designate specific facts showing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Factual controversies are resolved in favor of the nonmoving party, but factual controversies require more than conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

### III. DISCUSSION

The Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.*, abrogates the United States' sovereign immunity for compensatory damages arising out of claims for

> injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1); *see Johnson v. Sawyer*, 47 F.3d 716, 727 (5th Cir. 1995) (en banc). The parties agree, and we will assume for purposes of this appeal, that Texas law governs this dispute.[1]

In Texas, the elements of negligence "are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *IHS*

---

[1] We note that Lone Star's claims of negligence relate to biscuits the FDA collected in Arizona and tested in California.

*Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). "The two elements of proximate cause are cause in fact (or substantial factor) and foreseeability." *Id.* The district court concluded that Lone Star had failed to establish the duty of care a private laboratory in these circumstances would owe under Texas law. It further found that Lone Star had failed to present any evidence that the FDA proximately caused its financial loss. Because we find the causation issue dispositive, we do not address the district court's conclusion regarding duty.

The parties agree that Lone Star's summary judgment burden regarding proximate cause is to provide evidence that would allow a reasonable fact finder to conclude that the FDA's negligence caused a false positive result. Our review of the record leads us to the conclusion the district court reached: the summary judgment evidence does not raise a genuine issue of material fact on causation.

Lone Star urges that its evidence permits a reasonable juror to find that the FDA caused the biscuits to falsely test positive for *Listeria monocytogenes*. It cites Benware's deposition testimony related to collecting the biscuit samples from MarketFare for the following summary judgment facts: (1) Benware was not aware that the biscuits were in a perforated shrink-wrap packaging and thus might have been contaminated as he and the other inspector reached into the box; (2) the packaged biscuits were not placed in sterile containers for shipment to the FDA laboratory; and (3) the government documents do not establish the chain of custody for the biscuits. Lone Star also claims that the FDA impliedly acknowledged it had contaminated the biscuit samples when it failed to demand a market recall, despite the widespread sales of the biscuits to other food sellers.

The government responds that this deposition testimony falls far short of the minimum required to establish causation. It cites the report prepared by Lone Star's expert witness, which concludes:

> The integrity of the biscuit samples collected at MarketFare on March 21, 2002, was compromised by the FDA; thus, all results with regard to the biscuit component were meaningless. The FDA failed to follow its directives and mandates throughout its investigation at MarketFare, which began on March 21, 2002.

The government contends that a mere possibility of contamination differs meaningfully from evidence that contamination and a false positive in fact occurred. It argues that the former would amount to a strict liability standard for any breach of agency procedures, while the latter is unsupported by the summary judgment evidence.

In support of their arguments on causation, both parties cite the unpublished decision of *Baker v. Abo*, No. Civ. 01-1248, 2003 WL 21639151 (D. Minn. July 2, 2003). In that case, a truck driver was discharged based on the results of a drug test that he argued was improperly performed, leading to contamination of the sample and a false positive result. *Id.* at *1. The truck driver asserted that due to claimed irregularities in conducting the test, his results should have been voided and not communicated to the employer. *Id.* at *2. The court considered an affidavit by the truck driver's expert witness, but found the expert "did not opine that [the breach alleged] could have caused the positive result in this test"; the remaining evidence did not permit a reasonable factfinder to determine the defendant's negligence caused the false positive result. *Id.* at *4. The court expressly rejected a strict liability standard under which a mere possibility of contamination would carry the truck driver's summary judgment burden of raising a fact issue; it then granted summary judgment for the employer, finding the truck driver had failed to raise a fact issue on causation. *Id.* at *3–4.

Our review of the record reveals that the report of Lone Star's expert and the deposition testimony of Benware are the only pieces of evidence that pertain to the issue of proximate causation. The expert report discusses several

instances where the FDA inspectors failed to follow agency collection and testing protocol, but it is devoid of any claim that these failures caused the biscuit samples to test falsely positive for *Listeria monocytogenes*. Benware's testimony similarly permits an inference of breach, but it fails to raise a fact issue on whether the FDA's conduct caused the biscuit samples to test falsely positive for the bacteria. Because Lone Star bore the burden of proof on this essential element of its cause of action, the district court properly granted summary judgment to the government.

## IV. CONCLUSION

For the reasons discussed above, the district court's grant of summary judgment for the government is AFFIRMED.